UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br><br>vs.<br><br>JAMIE FRANK PEREZ,<br>Defendant. | **4:24-CR-40126-RAL**<br><br>**OPINION AND ORDER DENYING MOTION TO SUPPRESS** |

Defendant Jamie Frank Perez filed a motion, seeking to suppress all evidence seized from his truck on September 28, 2024, and all statements he made to law enforcement on September 30, 2024, as fruit of the poisonous tree. Doc. 47. Magistrate Judge Veronica L. Duffy issued a Report and Recommendation, Doc. 60, recommending that Perez's motion to suppress be denied. Perez objected to that Report and Recommendation. Doc. 61. This Court now adopts the Report and Recommendation because the officers had probable cause to arrest Perez and none of the evidence seized nor statements made by Perez to law enforcement were fruit of the poisonous tree.

## I. Factual Background

### A. The Arrest

This case arises from an incident during the evening of September 28, 2024, after a woman called local dispatch around 5:00 p.m. to report that there was a man slumped over in his blue truck in the middle of the road. Suppression Hr'g Tr. (Part 1) at 6:5–17. The caller reported that she had honked a few times, and the man had not woken up. Id. at 6:5–15. Sioux Falls police officers

Matthew Stangel and Daniel Shugar-Garza responded to the call around 5:44 p.m. Id. at 6:18–25; Gov. Ex. 1 at 1:30. At the time, Officer Stangel was a patrol officer, Suppression Hr'g Tr. (Part 1) at 5:3, 5:20, and Officer Shugar-Garza was a traffic officer trained as a Drug Recognition Expert, Suppression Hr'g Tr. (Part 2) at 4:9–11, 6:10–8:22.

Upon arriving, Officers Shugar-Garza and Stangel observed a vehicle that matched the caller's description. Id. at 9:20–10:2. Officer body camera footage shows the blue truck stopped in the center of the road just beyond the end of the double yellow line. Gov. Ex. 1 at 1:30; Gov. Ex. 2 at 1:30. Further down the road was a parking area in front of a monument. See Def. Ex. A; Suppression Hr'g Tr. (Part 1) at 8:2–5. The officers approached the truck from behind. Gov. Ex. 1 at 1:35; Gov. Ex. 2 at 1:30.

The truck was still running, and the body camera footage captures the sound of the truck's running engine. Gov. Ex. 1 at 1:40. Perez was slumped over the steering wheel visible through the open car window, and he did not move or wake up when the officers first approached him. Id. at 1:37–1:52. Officer Stangel reached into the truck and shut off the vehicle. Suppression Hr'g Tr. (Part 1) at 8:17–23. He testified to seeing the truck in "drive" and Perez's foot on the brake pedal. Suppression Hr'g Tr. (Part 1) at 9:1–5.

When Officer Stangel turned off the vehicle, Perez awakened. Id. at 9:9–13. Officer Stangel and Shugar-Garza both testified that Perez was confused and mumbled during their initial interaction with him. See id. at 9:23–10:9; Suppression Hr'g Tr. (Part 2) at 13:8–21. When asked to exit his vehicle, Perez did, and as he stepped out, a butane torch lighter fell out onto the ground from the vehicle. See Suppression Hr'g Tr. (Part 2) at 11:7–12. Perez was patted down and then asked to sit in Officer Shugar-Garza's vehicle for the first part of the field sobriety tests. See id. at 13:8–15:24; Suppression Hr'g Tr. (Part 1) at 11:24–12:7.

While in the patrol car, Officer Shugar-Garza asked Perez questions, including whether he was sick or injured. See Gov. Ex. 2 at 7:05–7:10. Perez replied that he was not. Id. Officer Shugar-Garza asked Perez when he had arrived and the last thing he remembered. See Gov. Ex. 2 at 7:35–8:05. Perez did not recall when he had arrived and paused before answering that he guessed the last thing he remembered was "driving down the road." Id. Perez did not know the name of the road but knew that they were at the Monument for Early Settlers of Sioux Falls. Id. at 8:05–8:50. Perez told Officer Shugar-Garza that he had been sober for a long time and that the lighter in his lap was for smoking cigarettes. Id. at 6:20–6:50, 9:00–9:05. He estimated that he had smoked a cigarette about an hour before. Id. at 9:05–9:25. Perez told Officer Shugar-Garza that some of his questions were odd. Id. at 9:25–9:30.[1]

Officer Shugar-Garza then had Perez recite a portion of the alphabet, which Perez could do without any mistakes. See id. at 9:35–10:50. Officer Shugar-Garza asked Perez to count backwards from 75 to 49, which Perez did without any mistakes. See id. at 11:05–12:10. For the alphabet and the numbers tests, Officer Shugar-Garza asked Perez to place his hands on his knees. Gov. Ex. 2 at 9:30–9:35, 11:00–11:05. Officer Shugar-Garza testified that he observed Perez fidgeting and lifting his hands during one of the tests. Suppression Hr'g Tr. (Part 2) at 17:1–14. Officer Stangel observed these tests from outside of the police vehicle and testified that Perez "was having a really hard time sitting still" and was "really rigid." Suppression Hr'g Tr. (Part 1) at 13:5–11. In the body camera footage, Perez takes his hands off his knees multiple times during the numbers test. See, e.g., Gov. Ex. 2 at 11:25, 11:40, 11:50.

[1] Defendant's Exhibit E transcribed this line as "It's hard for me to answer some of those questions you're describing." Doc. 56 at 14. But it sounds more like "It strikes me as odd some of those questions you're describing." The fact he stumbles through this sentence may be an indicator of some impairment.

Perez yawned while in the patrol car. Id. at 12:15–12:20. When Officer Shugar-Garza asked why Perez was so tired, Perez replied that he had been working a lot and described his different jobs to Officer Shugar-Garza. Id. at 12:15–14:00.

Officer Shugar-Garza then asked Perez to follow a pen with his eyes. Id. at 14:00–14:26. This test is called a horizontal gaze nystagmus test:[2] Throughout this test, Perez commented that the test was straining his eyes and irritating him and that the air conditioning was blowing into his eyes and bothering him. Gov. Ex. 2 at 15:00–30. Officer Shugar-Garza turned off the air conditioning. Id. at 15:25–15:30. Perez still complained about the air blowing in his eyes. Id. at 15:45. Officer Shugar-Garza noted the test was taking longer because they kept moving and stopping. Id. at 16:10–16:20. Perez mentioned having issues with his sinuses, fluid in his eyes, and potentially a cold. Id. at 16:43–17:10. Officer Shugar-Garza noted this comment because Perez had denied being sick or injured a few minutes before. Suppression Hr'g Tr. (Part 2) at 19:19–20:10.

Officer Shugar-Garza thought Perez spoke in a "pretty low voice." Id. at 15:11. Officer Shugar-Garza did not observe any sort of nystagmus, but he did observe that Perez "struggled to maintain his focus on the tip of the pen," which led Officer Shugar-Garza "to restart the test multiple times." Id. at 19:13–22. He perceived Perez's pupils to be constricted. Id. at 20:16–19. While Officer Shugar-Garza believed that Perez had "complete[d] portions of the tests satisfactorily," "overall [he] observed what appeared to be indications of impairment throughout" the first set of field sobriety tests. Id. at 22:16–23:2.

Officer Shugar-Garza then asked Perez to exit the vehicle to perform the remaining three tests: the walk-and-turn test, the one-legged stand tests, and the breathalyzer. See Gov. Ex. 2 at

[2] Nystagmus is when a person has rapid, involuntary eye movements (congenital or acquired). See What Is Nystagmus, Am. Acad. Ophthalmology (2025), https://www.aao.org/eye-health/diseases/what-is-nystagmus.

17:25–17:30. Officer Shugar-Garza and Officer Stangel both stood near Perez as he completed the three tests. See Gov. Ex. 2 at 18:25–25:09.

Officer Shugar-Garza testified that while he was instructing Perez on the first test, the walk-and-turn test, Perez "was unable to maintain his balance" and "stepped out of that [instruction stance] various times." Suppression Hr'g Tr. (Part 2) at 24:2–5. The body camera footage shows Perez stepping out of the instruction stance and saying that his boots and his age affect his ability to stand. See Gov. Ex. 1 at 19:10–20:40.

Officer Shugar-Garza testified that Perez, during the first test, was "walking in a rigid stance," "taking very deliberate steps while walking," before he "paused, lifted his right arm, and then completed an improper turn." Suppression Hr'g Tr. (Part 2) at 25:2–11. The body camera footage shows Perez completing a turn during his test that is noticeably different from the turn demonstrated by Officer Shugar-Garza and missing the heel-to-toe in the final two steps. See Gov. Ex. 2 at 21:30–22:25. Compare id. with Gov. Ex. 1 at 18:45–21:25 (Officer Shugar-Garza demonstrating the walk-and-turn test). Officer Shugar-Garza observed that Perez paused before completing the rest of the test and missed heel-to-toe on the final step. Suppression Hr'g Tr. (Part 2) at 25:2–15. Officer Shugar-Garza also observed Perez's "arms bent at the below and then both legs bent slight as well, which appeared to be like, a flexing like manner." Id. at 27:5–8. Overall, Perez demonstrated "multiple indications of impairment." Id. at 27:14–28:3 (testifying that the tests are not graded on a pass/fail basis but rather on the totality of the situation).

Officer Shugar-Garza then instructed Perez on the one-legged stand test. See Gov. Ex. 2 at 22:45–23:23. During this test, Perez "started out by hopping multiple times," with his legs and arms bent. Suppression Hr'g Tr. (Part 2) at 28:24–29:3. The body camera footage captured Perez hopping at the beginning of the test. See Gov. Ex. 2 at 23:30. Around count 16, Perez wavered.

See id. at 23:55. Officer Shugar-Garza interpreted Perez's performance on the one-legged stand test as containing indicators of impairment. Suppression Hr'g Tr. (Part 2) at 29:17–19.

Finally, Officer Shugar-Garza had Perez complete a preliminary breath test, which showed a .000 percent breath alcohol content. Id. at 30:15–25. Officer Shugar-Garza then placed Perez under arrest for driving while intoxicated (DWI), in violation of SDCL § 32-23-1. Id. at 31:8–10. After placing Perez in the patrol car, Officer Shugar-Garza asked Officer Stangel to take off his glasses so he could observe Stangel's pupil size and compare it to Perez's. See Gov. Ex. 2 at 29:25–29:35.

**B. The Search and Subsequent Statements**

Following the arrest, Officer Stangel searched Perez's car and personal belongings for other evidence of the narcotic DWI crime. See Suppression Hr'g Tr. (Part 1) at 14:7–17. In Perez's backpack, Officer Stangel found a wallet, a firearm, and a small black digital scale with white residue. Id. at 14:7–15:12. Officer Stangel field-tested the white residue, which yielded a presumptive positive result for methamphetamine. Id. at 15:13–15.

Officer Shugar-Garza obtained a warrant to test Perez's blood. Suppression Hr'g Tr. (Part 2) at 33:20–34:8. Perez's blood tested negative for alcohol and positive for both amphetamines and methamphetamines. Id. at 34:9–14. Perez later made statements to law enforcement. Doc. 48 at 2.

**C. The Suppression Hearing**

A federal grand jury indicted Perez for possession of a firearm by a prohibited person. Doc. 1. Magistrate Judge Veronica L. Duffy held a hearing on Perez's motion to suppress, during which she heard testimony from Officer Stangel, Officer Shugar-Garza, and Donald McCrea. McCrea is the founder and president of Premier Police Training, which is a national law enforcement training

company. Suppression Hr'g Tr. (Part 1) at 34:8–14. McCrea testified on behalf of Perez. Judge Duffy also received several exhibits into evidence, including body camera footage of the investigation from both Stangel and Shugar-Garza, documents related to the blood test, photos of where the truck was stopped, the arrest report, an unofficial transcript of the body camera footage audio by the Federal Defender's Office, and a report by McCrea, which evaluated whether probable cause had been established for Perez's arrest. See Gov. Ex. 1–2; Def. Ex. A–E.

At the suppression hearing, which was conducted over the course of two separate days, Officers Stangel and Shugar-Garza testified about Perez's arrest. Officer Shugar-Garza explained that the horizontal gaze nystagmus test, the walk-and-turn test, and the one-legged stand tests are "the three tests that have been validated for use in the standardized field sobriety tests," and the alphabet and counting tests are a part of common practice within the department to conduct as a part of a DWI investigation. Suppression Hr'g Tr. (Part 2) at 14:16–15:8. Officer Shugar-Garza testified that he had observed signs of impairment, which led him to arrest Perez. Id. at 22:16–23:6.

When asked for his reasoning, Officer Shugar-Garza explained that the totality of the investigation led him to have probable cause to arrest Perez. Id. at 31:8–12. These factors included (1) the call for "a man down in a vehicle"; (2) Perez not being conscious upon the officers' arrival; (3) Perez's position in the driver's seat while the vehicle was still running; (4) the presence of the butane torch lighter, which in Officer Shugar-Garza's experience is frequently used with illicit drugs; (5) Perez's restless and talkative nature while in the patrol car during the first set of tests; (6) Perez's difficulty focusing while in the patrol car; and (7) the signs of impairment during the walk-and-turn and one-legged stand test, such as rigid muscle movement. See id. at 31:11–32:3.

Officer Shugar-Garza had previously testified that Perez's pupils were constricted, potentially from drug use, see id. at 20:16–22:4, and Officer Shugar-Garza had mentioned Perez's pupil size in his affidavit for the search warrant, see Def. Ex. B at 6, Doc. 52 at 9. During cross-examination, Officer Shugar-Garza described Perez's pupil size as "a piece in the totality" that led him to arrest Perez. Suppression Hr'g Tr. (Part 2) at 52:9–17.

On behalf of the defense, McCrea testified that Perez had performed all of the field tests properly based on his review of the body camera footage. Suppression Hr'g Tr. (Part 1) at 36:12–19 (reviewing body camera footage), 39:25–42:6, 45:19–49:12. McCrea did not observe the rigidity or mumbling that Officers Stangel and Shugar-Garza referred to in their testimony and prior affidavit, and he considered any of Perez's tenseness to be a common response to interacting with law enforcement. Id. at 42:7–43:7. McCrea disagreed with Officer Shugar-Garza's assessment that the fact Perez's pupils were constricted was another sign of impairment, and McCrea testified that pupil size can depend on multiple factors, including age. Id. at 43:8–44:11. Finally, McCrea interpreted South Dakota law to be that if there is no line on a road, it is a parking lot. Id. at 50:5–12. This Court, however, agrees with Judge Duffy that based on South Dakota's definition of highway, there is no requirement that a highway have painted lines. See Doc. 60 at 7 n.7 (citing SDCL § 31-1-1). McCrea concluded in his testimony that based upon the totality of the circumstances, the officers failed to establish probable cause for the arrest for DWI. Id. at 51:9–16.

McCrea had concluded differently in his written report, which Perez submitted as Exhibit C. Id. at 52:4–11. In his report, as the government established during cross-examination, McCrea identified ten facts from the investigation that "could lead to probable cause to arrest Perez for a violation of SDCL 32-23-1." Def. Ex. C at 6–8, Doc. 52 at 18–20. McCrea's report stated that

"[w]hether probable cause existed for [Perez's] arrest is debatable," but that "there are factors present that would allow a challenge to be made for his arrest." Def. Ex. C at 8, Doc. 52 at 20. When asked about this part of his report, McCrea characterized the report as "not a final conclusion on [his] part at all," and said some "factors [were] no longer present," such as "[w]here the vehicle was parked in the middle of the roadway." Suppression Hr'g Tr. (Part 1) at 52:12–23. However, McCrea later acknowledged on cross-examination that if he were an officer who came upon this truck stopped where it was in this case, "[i]t would definitely lead [him] to investigate." Id. at 57:10–58:2.

Judge Duffy recommended that Perez's motion to suppress be denied, concluding (1) probable cause supported Perez's arrest for violation SDCL § 32-23-1, and (2) both the evidence obtained during the search and Perez's statements need not be suppressed as fruit of the poisonous tree. Doc. 60. Perez has now objected to that Report and Recommendation. Doc. 61.

This Court reviews a report and recommendation under the statutory standards found in 28 U.S.C. § 636(b)(1), which provides in relevant part that "[a] judge of the [district] court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." However, "[i]n the absence of an objection, the district court is not required 'to give any more consideration to the magistrate's report than the court considers appropriate.'" United States v. Murillo-Figueroa, 862 F. Supp. 2d 863, 866 (N.D. Iowa 2012) (quoting Thomas v. Arn, 474 U.S. 140, 150 (1985)). Having conducted a de novo review, this Court adopts the report and recommendation.

## II. Probable Cause for The Arrest

Under the Fourth Amendment, a warrantless arrest must be supported by probable cause. Bell v. Neukirch, 979 F.3d 594, 603 (8th Cir. 2020) ("In conformity with the rule at common law,

a warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed.") (quoting Devenpeck v. Alford, 543 U.S. 146, 152 (2004)). "Probable cause exists when the totality of the circumstances at the time of the arrest are sufficient to lead a reasonable person to believe that the defendant has committed or is committing an offense." Brown v. City of St. Louis, 40 F.4th 895, 900 (8th Cir. 2022) (quoting Nader v. City of Papillion, 917 F.3d 1055, 1058 (8th Cir. 2019)) (internal quotations omitted).

To determine whether probable cause existed, a court "examine[s] the events leading to arrest . . . from the standpoint of an objectively reasonable police officer" and whether "the facts known to the arresting officer *at the time of the arrest*" support a reasonable conclusion that there was probable cause. Id. (quoting District of Columbia v. Wesby, 583 U.S. 48, 56–57 (2018); Bell, 979 F.3d at 603 (emphasis in original)) (cleaned up). Officers are afforded "substantial latitude in interpreting and drawing inferences from factual circumstances." Just v. City of St. Louis, 7 F.4th 761, 767 (8th Cir. 2021) (quoting Bell, 979 F.3d at 603). When reviewing decisions concerning DWI or DUI arrests, other district courts in the circuit have routinely credited an officer's determination that a suspect is impaired when finding probable cause. See Doc. 60 at 14 (citing United States v. Johnson, No. 23-CR-65 (JNE/LIB), 2023 WL 8358611, at *14 (D. Minn. Oct. 5, 2023), report and recommendation adopted, No. 23-CR-65 (JNE/LIB), 2023 WL 8355945 (D. Minn. Nov. 30, 2023) ("After failing the field sobriety tests, Trooper Kuhn had probable cause to believe that Mr. Robinson was in possession of a controlled substance and was driving under the influence."); Gittemeier v. Phillips, No. 4:18-CV-966 SRW, 2021 WL 270228, at *10 (E.D. Mo. Jan. 27, 2021)).

Officer Shugar-Garza testified that he arrested Perez based on the totality of the circumstances, including the 911 call, the discovery of Perez asleep in a running vehicle, and the indicators of impairment Perez demonstrated during his field sobriety tests. Suppression Hr'g Tr. (Part 2) at 31:8–32:5. Judge Duffy reviewed the decisions of the Supreme Court of South Dakota interpreting SDCL § 32-23-1 and concluded the officers had probable cause to arrest Perez based on the totality of the circumstances. Doc. 60 at 8–16. This Court agrees that both the circumstances surrounding the officers' discovery of Perez and Officer Shugar-Garza's determination that Perez was impaired following the field sobriety tests provided probable cause for the arrest.

The law in question mandates that "[n]o person may drive or be in actual physical control of any vehicle while" under the influence. SDCL § 32-23-1. Perez plainly had "actual physical control" of the vehicle; Perez was in the driver's seat with the keys in the ignition of an idling truck. See Doc. 60 at 9–10 (citing Peterson v. Dep't of Pub. Safety, 373 N.W.2d 38, 38–39 (S.D. 1985); State v. Remacle, 386 N.W.2d 38, 38–40 (S.D. 1986); State v. Kitchens, 498 N.W.2d 649, 652 (S.D. 1993)).[3] Perez does not contest that he had "actual physical control." See Doc. 61. The question is whether Officer Shugar-Garza had probable cause that Perez was under the influence while in actual physical control of his vehicle.

This Court agrees with Judge Duffy that the officers had probable cause to believe Perez was under the influence and that the arrest compiled with the Fourth Amendment. A caller had reported a man asleep at the wheel of a vehicle stopped in the middle of the road and that the man did not wake up after she honked her horn at him. Suppression Hr'g Tr. (Part 1) at 6:5–17. Responding officers found Perez asleep at the wheel of a running vehicle matching the caller's

[3] In Kitchens, the defendant was determined to have "actual physical control" of the vehicle even though the keys were in his pocket and the engine was off. See Kitchens, 498 N.W.2d at 651–54.

description. Id. at 6:18–7:16. These facts support probable cause for an officer to consider arresting a person for a violation of SDCL § 32-23-1. See Peterson, 373 N.W.2d at 38–39 (finding probable cause where man was asleep in the driver's seat of a vehicle that was off, was disoriented, and appeared intoxicated to officers); United States v. Hoeft, 128 F.4th 917, 919–20 (8th Cir. 2025) (holding that officers had reasonable suspicion that the defendant had violated SDCL § 32-23-1 where he was observed "passed out behind the wheel of a small white truck [that] . . . appeared to be running").

After Perez awakened and went through the field sobriety tests, Officer Shugar-Garza concluded that Perez showed signs of impairment during his field sobriety tests. This Court defers to Judge Duffy's decision to credit the testimony of Officer Shugar-Garza. See United States v. Lockett, 393 F.3d 834, 837–38 (8th Cir. 2005) ("The magistrate's finding that the officer's testimony was believable is deserving of deference."); United States v. Stoneman, No. CR 09-30101-RAL, 2010 WL 1610065, at *6 (D.S.D. Apr. 20, 2010) ("The Court is entitled to give weight to the credibility determination of the magistrate judge." (citing United States v. Martinez-Amaya, 67 F.3d 678, 681 (8th Cir. 1995))). Moreover, body camera footage documents and supports much of what Officer Shugar-Garza said while testifying. Under these circumstances, it was "objectively reasonable" for Officer Shugar-Garza to conclude that Perez had violated SDCL § 32-23-1. See Brown, 40 F.4th at 900.

Perez objects to the ultimate finding that Officer Shugar-Garza had probable cause to effectuate his arrest. Doc. 61 at 6–8. Perez first argues that Officer Shugar-Garza's conversation with Officer Stangel about his pupils after the arrest demonstrates that he doubted his decision to arrest Perez. Doc. 61 at 7. However, the law requires an objective assessment of probable cause and therefore, any subjective doubt that may or may not have existed does not bear upon this

Court's evaluation of probable cause. See Brown, 40 F.4th at 900. Whether Perez's pupils were constricted from drug use or age does not change the legal conclusion that Officer Shugar-Garza had probable cause based on the other findings of impairment clearly documented on body camera footage to effectuate Perez's arrest.

Perez then argues that Officer Shugar-Garza was not credible, asserting that the "indications of impairment" that Officer Shugar-Garza testified to in his affidavit for a search warrant were not reflected in the body camera footage, that "Officer Shugar-Garza provided a different 'totality of the investigation' as the reason for arresting Mr. Perez when he testified on July 15, 2025," and that Officer Shugar-Garza wrote in his police report that Perez was stopped over the double line." Doc. 61 at 8. Perez also argues that Officer Shugar-Garza lacked credibility because "during cross-examination, Officer Shugar-Garza was very argumentative and tried to avoid answering the simplest questions." Id. at 8–9. This Court has reviewed the body camera footage and does not find what is captured there so inconsistent with Officer Shugar-Garza's affidavit or testimony to discredit the officer. As noted above, this Court defers to Judge Duffy's conclusion that Officer Shugar-Garza was credible. Doc. 60 at 14–15.

Finally, Perez argues that the lack of probable cause was established by McCrea's testimony. Doc. 61 at 9. McCrea's testimony, however, contradicted his report, where he wrote that an officer could have probable cause under these facts, and McCrea conceded on cross-examination that he would have investigated this truck and its sleeping driver further if he were the officer on the scene.

This Court is unconvinced by McCrea's explanation that the conflicting report was "not a final conclusion on [his] part at all," and some "factors [were] no longer present," such as "[w]here the vehicle was parked in the middle of the roadway," Suppression Hr'g Tr. (Part 1) at 52:12–23.

The location of the car in a parking lot or on a road does not impact on whether someone can be arrested for a violation of SDCL § 32-23-1. The statute itself does not distinguish between the road or a parking lot. See SDCL § 32-23-1. The recent Eighth Circuit opinion Hoeft relies on State v. Kitchens, where the DWI conviction was upheld when the defendant was asleep behind the wheel *in a parking lot*. See Hoeft, 128 F.4th at 920 (citing Kitchens, 498 N.W.2d at 651–52). Where the truck was parked does not somehow justify a change in the McCrea report's ultimate conclusion.

The arrest was constitutional and Perez's objections to the contrary are overruled.

## III. Search Incident to Arrest and Interview Statements

Perez seeks to suppress the evidence seized and statements obtained by law enforcement by challenging the constitutionality of the underlying arrest. See Doc. 47 at 1. He does not dispute the independent validity of the search or interrogation themselves. See Doc. 48 at 5. Therefore, the sole issue is whether Officer Shugar-Garza had probable cause to arrest Perez. This Court has found that he did. Thus, the search incident to arrest and subsequent interview are not fruit of the poisonous tree under Wong Sun v. United States, 371 U.S. 471 (1963).

## IV. Conclusion and Order

For the reasons stated above, it is hereby

ORDERED that Perez's Objections to the Report and Recommendation, Doc. 61, are overruled. It is further

ORDERED that the Report and Recommendation, Doc. 60, is adopted. It is finally

ORDERED that Perez's Motion to Suppress, Doc. 47, is denied.

DATED this 9th day of September, 2025.

BY THE COURT:

ROBERTO A. LANGE
CHIEF JUDGE